**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

FREDERICK MANAGEMENT
COMPANY, LLC, a limited liability
corporation, formerly known as
St. James Management Company, LLC,

                Plaintiff,

v.                                            CIVIL ACTION NO.  3:12-3019

GENERAL ASSURANCE OF AMERICA,
INC., a Virginia corporation; and COMPASS
CLAIMS SERVICE, INC., a foreign corporation,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a motion by Plaintiff Frederick Management Company, LLC, for partial summary judgment as to choice of law on the insurance issues in this case (ECF No. 266) and a motion by Defendant General Assurance of America, Inc., ("GAA") for summary judgment on all of Plaintiff's claims (ECF No. 275). Also pending is Plaintiff's motion to strike (ECF No. 324) and GAA's request for sanctions (ECF No. 323).[1] For the reasons explained below, Plaintiff's motion for summary judgment (ECF No. 266) is **DENIED as moot**, because the Court assumes, without deciding, that West Virginia laws applies, and GAA's motion for summary judgment (ECF No. 275) is **GRANTED in part**, specifically as to Counts I, III, IV, VI, and VII. Counts II and V are **DISMISSED as moot**. The Court **DENIES** both Plaintiff's motion to strike (ECF No. 324) and GAA's request for sanctions (ECF No. 323). The Court also

---

[1] GAA makes this request for sanctions within its response to Plaintiff's supplemental memorandum of law.

**DENIES as moot** ECF Nos. 271, 272, and 277. As no claims remain against GAA, the Court **DIRECTS** the Clerk to terminate GAA as a party to this case.

Additionally, the Court **DIRECTS** Plaintiff to file, within fourteen (14) days of the entry of this Memorandum Opinion and Order, a report discussing whether it intends to continue pursuing its claims against Compass Claim Service, Inc., and its intentions for otherwise proceeding in this case.

## I.      Background Information

This case stems from damage to a commercial property owned by Plaintiff Frederick Management Company, LLC, and the denial of an insurance claim for that damage. The commercial property at issue is a now-vacant building located in Richwood, West Virginia. Plaintiff, acting under its prior business name of St. James Management Company, signed a note and deed of trust for the purchase of this property in December 2000, receiving a loan of $80,985.50 from First Community Bank ("the Bank") in exchange for giving the Bank a security interest in the property. Compl. ¶¶ 10, 12, ECF No. 1. Under the terms of the deed of trust, Plaintiff was required to insure the property for its full value. *Id.* ¶ 13. If Plaintiff failed to do so, the Bank had the right to purchase "forced-placed insurance" or collateral protection insurance for the property. *Id.* ¶ 15. The amount of the premiums incurred by the Bank in purchasing this insurance would be added to the amount of the loan. *Id.* Plaintiff maintained the required property insurance until November 2002, and the Bank thereafter maintained forced-placed insurance on the property. *Id.* ¶ 16. Plaintiff renewed the loan in 2006, this time using its current business name. *Id.* ¶ 14.

On or about March 15, 2010, a heavy snow storm caused part of the building's roof to collapse, causing "significant damage." *Id.* ¶ 19. When the damage occurred, the Bank had a

2

forced-placed insurance policy on the property through Arch Insurance Company ("Arch"). *Id.* ¶ 22. John Hankins, Plaintiff's Managing Member, alerted Bank employee Gary Austin about the collapse shortly thereafter, presumably in order to begin processing the insurance claim for the damage. *Id.* ¶ 20. Mr. Austin emailed Plaintiff a Loss Notice Reporting Form on March 18, 2010, which Plaintiff returned a few days later. *Id.* Pursuant to instructions from Defendant Compass Claim Service, Inc., ("Compass") Plaintiff scheduled a property inspection with local adjuster Lisa Watson for April 10, 2010. *Id.* ¶¶ 25-26. That inspection did not occur as scheduled, however, because the adjuster suffered an accident on the day of the inspection. *Id.* ¶¶ 27-28.

A second local adjuster, Roland Jones, contacted Mr. Hankins on April 14, 2010, and after their attempts to set an inspection date were unsuccessful, Mr. Hankins told Mr. Jones that the property could be accessed through an unsecured door and granted permission for inspectors to access the property. *Id.* ¶¶ 29-32. That same day, Mr. Hankins sent Mr. Austin photographs of the damages and a repairs estimate. *Id.* ¶ 33. Mr. Jones inspected the property that same day but wanted to conduct a second inspection with Mr. Hankins. *Id.* ¶¶ 34-35. That second inspection could not take place until May 23, 2010. *Id.* ¶¶ 35-36.

After the roof collapse, the property was the target of theft and vandalism, prompting Mr. Hankins to eventually hire a watchman for the building. *Id.* ¶ 38. On July 26, 2010, Mr. Hankins alerted Mr. Austin of these problems and inquired into the status of the insurance claim; Mr. Hankins also wanted to know what company issued the forced-placed policy. *Id.* ¶ 39. Mr. Austin emailed Lori Blevins, another Bank employee, about this request, but she never contacted Mr. Hankins. *Id.* ¶ 40. On August 1, 2010, the property's watchman informed Mr. Hankins about

even more theft and damage at the property. *Id.* ¶ 42. Plaintiff told Mr. Austin and local police about this theft and vandalism. *Id.* ¶ 43.

> Plaintiff thereafter received an undated letter from Compass, stating that,
>
> We have made several attempts to contact you in order to set up a time for one more inspection with a Structural Engineer. We have been informed by Chris Lafoon of General Assurance of America that the claim report to the bank can not [sic] be concluded until the Structural Engineer is allowed to re inspect [sic] the property. The claim representative that has already inspected the property, Roland Jones, will continue to attempt contact with you to set the appointment.

Compl. Ex. 8, ECF No. 1-1 at 97; Compl. ¶ 45. That letter refers to Defendant GAA, a corporation that Plaintiff claims acted as an agent of the Bank and Arch in handling this insurance claim. Compl. ¶ 6. Plaintiff subsequently received a second letter from Compass dated August 26, 2010, stating that, under the insurance policy, Plaintiff was required to permit inspection of the property, that "Roland Jones [would] help facilitate" the necessary re-inspection of the property, and that the claim would be closed if Compass did not receive a response by September 1, 2010. Compl. Ex. 9, ECF No. 1-1 at 99; Compl. ¶ 46. Plaintiff sent a response letter by mail and fax on August 31, 2010, providing a timeline of events after the initial collapse and requesting timely settlement of the insurance claim. Compl. Ex. 10, ECF No. 1-1 at 102-03; Compl. ¶ 48.

GAA employee Christina Lafoon sent a letter to the Bank dated September 17, 2010, detailing its efforts to resolve the insurance claim and noting that: 1) Compass telephoned Plaintiff multiple times from June 16 to August 31, 2010, showing Mr. Hankins' "lack of cooperation"; 2) the two letters were sent to Mr. Hankins; 3) Mr. Hankins faxed a response on August 31, 2010; and 4) an adjuster spoke with Mr. Hankins by phone that same day, at which time "Mr. Hankins told the adjuster over the phone that he did not want to drive the 300 miles to [another] appointment and that he would not allow another inspection." Compl. Ex. 11, ECF No.

1-2 at 2-4. Ms. Lafoon concluded by stating that GAA had "exhausted all of [its] efforts to finalize the claim" and that the Bank was responsible for getting access to the property. *Id.* Plaintiff claims it was unaware of this letter. Compl. ¶¶ 50-51. Although Mr. Hankins continued to contact Mr. Austin, Mr. Austin told Mr. Hankins in fall of 2010 that he was no longer authorized to speak on the matter and that another Bank employee would be Mr. Hankins' contact. *Id.* ¶¶ 54-55.

On November 18, 2010, Ms. Lafoon sent a letter to the Bank, stating that access to the property could not be attained and that, "[b]ased on [Bank employee Ester Fulford's] conversation with Laura Little, Senior Vice President [of GAA], on November 10, 2010, [Ms. Fulford] agreed to deny the claim and close the file, [and] we have since closed the claim." Compl. Ex. 13, ECF No. 1-2 at 15. Plaintiff was not informed of this development. Compl. ¶¶ 57-58.

On November 24, 2010, Plaintiff spoke about the claim with Ms. Lafoon, who—according to Plaintiff—"acted in all respects as if the claim was still under investigation." *Id.* ¶ 60. It was not until Plaintiff contacted the structural engineer assigned to the case that Plaintiff found out that the claim was closed. *Id.* ¶ 62. Starting in January 2011, Plaintiff attempted to have the claim reopened but was unsuccessful in getting any insurance claim relating to the property approved. *Id.* ¶¶ 68-93.

Plaintiff thereafter filed the pending Complaint against the Bank, GAA, Compass, and Arch, alleging the following seven Counts: Count I - Negligence; Count II - Breach of Contract; Count III - Breach of Insurance Contract, Common Law Bad Faith, & *Hayseeds*; Count IV - Unfair Claims Practices; Count V - Unjust Enrichment; Count VI - Equitable Estoppel; Count VII - Civil Conspiracy. In short, Plaintiff argues that Defendants have failed in their various

duties to properly settle the insurance claim regarding the property. Since that time, Plaintiff has dismissed all claims against the Bank and Arch. Part. Dismiss. Order, ECF No. 311.

This case has been complex and contentious. There have been numerous motions for summary judgment filed by the parties, but because certain claims have settled, only two of these motions are still pending: Plaintiff's motion for partial summary judgment as to choice of law on the insurance issues in this case and GAA's motion for summary judgment on all remaining claims. These two motions are ripe for resolution. The Court convened a status conference on March 10, 2014, to discuss the pending motions and ordered Plaintiff to file a supplemental briefing to aid in resolution of the pending motions for summary judgment by March 17, 2014. Plaintiff timely filed its supplemental memorandum, ECF No. 322, and GAA timely filed a response, in which it requested sanctions against Plaintiff, ECF No. 323. Plaintiff also filed a motion to strike certain references made by GAA. ECF No. 324. Before that motion to strike became ripe for resolution, the Court held a pretrial conference on March 31, 2014. All motions are now ripe for resolution.

In Section II, the Court discusses the legal standard applicable to motions for summary judgment. In Section III, the Court examines miscellaneous statements made by Plaintiff which do not necessarily bear on the pending motions but nonetheless should be addressed. In Sections IV through X, the Court assesses each Count to determine whether summary judgment should be granted as to any of the Counts. In Sections XI and XII, the Court discusses Plaintiff's motion to strike and GAA's request for sanctions, respectively.

## II.    Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

"'[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'" *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 822 (D. Md. 1998) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)). "Thus, if the movant bears the burden of proof on an issue, . . . he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

### III.    Plaintiff's Arguments for Amendment and Certification

Plaintiff filed a joint response to Defendants' respective motions for summary judgment. ECF No. 280 ("Jt. Resp.").[2] In this joint response, Plaintiff states that "it may be appropriate in this case to permit or allow an amendment of the pleadings to conform to the evidence in that other causes of action or theories of recovery may be available that have not been pled, such as tortious interference with a contractual relationship." Jt. Resp. 4 (footnote omitted). Plaintiff cites to Federal Rule of Civil Procedure 15(b)(2) in support—but appears to have meant 15(a)(2), which states that after the period to amend as a matter of right has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "[t]he court should freely give leave when justice so requires." The time to amend as a matter of course has long since passed, and the deadline for amendment set in the scheduling order was November 29, 2012—nearly one year before Plaintiff filed the joint response. If Plaintiff desired to amend its pleadings, it should have filed a motion for leave to do so. Even if leave were properly sought, however, the Court would not be inclined to allow amendment at this time because the case is now ripe for summary judgment, discovery has closed, and Plaintiff has presented no evidence that the claim(s) it desires to add could not have been pled much earlier.

Additionally, "Plaintiff suggests to the Court that the insurance issues in this case may be an appropriate submission to the West Virginia Supreme Court of Appeals via the certification of issues process under West Virginia law." Jt. Resp. 4. West Virginia law grants the West Virginia Supreme Court of Appeals authority to answer questions of law certified to it by this Court:

> The supreme court of appeals of West Virginia may answer a question of law certified to it by any court of the United States . . . if the answer may be determinative of an issue in a pending cause in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state.

---

[2] This filing was made before the settlement of certain claims mooted several motions for summary judgment.

W. Va. Code § 51-1A-3. The Court, however, does not believe that certification is necessary in the instant case. Existing law is sufficiently analogous to the facts of the instant case and clear in its result that certification is not necessary.

Having settled these preliminary issues, the Court now turns to whether summary judgment should be granted as to the individual Counts in the Complaint.

## IV.     Count I - Negligence

In Count I, Plaintiff alleges that the Bank and GAA breached their respective duties of care owed to Plaintiff in their handling of the insurance claim. As mentioned above, Plaintiff has dismissed all of its claims against the Bank. GAA moves for summary judgment on this Count.

Count I of the Complaint alleges that both the Bank and GAA acted negligently. However, Plaintiff's joint response opposing summary judgment argues that the *Bank* owed a special duty and makes no argument that *GAA* owed any such duty. *See* Jt. Resp. 28-29. The Court directed Plaintiff to file a supplemental memorandum explaining the source of any duty owed by GAA which could form the basis of its negligence claim. In its supplemental memorandum, Plaintiff argues that GAA violated several West Virginia statutes, namely the licensing statutes for insurance adjusters, *see, e.g.*, W. Va. Code § 33-12B-4, the prohibition against the payment of "kickbacks," *see* W. Va. Code § 33-11-4(8)(c), and the requirement that notices of insurance be filed with the West Virginia Insurance Commissioner, *see* W. Va. Code § 33-6-8. Plaintiff additionally claims that GAA failed to properly train and supervise its employees. However, even if the Court were inclined to find that violations of these statutes occurred—which the Court will not do here[3]—the damage about which Plaintiff complains was

---

[3] For example, GAA refutes the allegations that it has violated West Virginia licensing requirements or paid illegal kickbacks. In the face of this conflicting evidence, the Court will not make a conclusive finding as to whether violations of these West Virginia statutes have been

not caused by the alleged violation of any of these statutes. Because Plaintiff has proffered no other evidence regarding any duties owed by GAA, Plaintiff has failed to present evidence that could allow a reasonable juror to return a verdict in its favor. Therefore, summary judgment is granted in favor of GAA as to Count I.

## V.      Count II - Breach of Contract

As expressed at the pretrial conference on March 31, 2014, Plaintiff has voluntarily withdrawn Count II. The Court therefore dismisses this Count as moot.

## VI.     Count III - Breach of Insurance Contract, Common Law Bad Faith, & *Hayseeds*

Plaintiff has moved for partial summary judgment on this Count, as well as Count IV, on the issue of choice of law. Specifically, Plaintiff argues that West Virginia law should be used when interpreting the insurance policy in this case. GAA has also moved for summary judgment on this Count, arguing that Plaintiff lacks standing to pursue it. The Court will assume, without finding, that West Virginia law applies for purposes of interpreting the insurance policy at issue in this case.

Using West Virginia law, the Court must first determine whether Plaintiff could sue as a third-party beneficiary under the insurance policy at issue; if so, it is unnecessary to determine whether Plaintiff is actually an insured pursuant to the policy. West Virginia law provides,

> If a covenant or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise.

W. Va. Code § 55-8-12; *see also Erwin v. Bethlehem Steel Corp.*, 62 S.E.2d 337, 344 (W. Va. 1950) (noting that this provision "means, as if written as follows, including the words in

shown.

parentheses: 'If a covenant or promise be made for the sole benefit of a person with whom it is not made, or (if a covenant or promise is made for the sole benefit of a person) with whom it is made jointly with others, such person may maintain in his own name any action thereon'" (quoting syl. pt. 2, *Johnson v. McClung*, 26 W. Va. 659 (1885))). The evidence clearly establishes that Plaintiff was *not* the sole beneficiary of the forced-placed insurance policy. Rather, the Bank entered into the policy in part—if not, in whole—for its own benefit, as is made clear by the discussion of the insurance policy that follows later in this Section. The issue of whether Plaintiff was also intended to benefit from this policy is irrelevant, because the statute clearly requires that, to sue as a third party beneficiary, Plaintiff must have been the *sole* beneficiary of the contract at issue.

Plaintiff additionally points to West Virginia Code § 33-6-3 for the proposition that he has an insurable interest which he may sue to protect:

> (a) No insurance contract on property or of any interest therein or arising therefrom shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured.
> (b) "Insurable interest" as used in this section means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.
> (c) The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury, or impairment thereof.

W. Va. Code § 33-6-3. However, it appears that this definition of "insurable interest" is a place-filler of sorts, meant to be used in situations where an insurance policy casts a wide definition of coverage. *Cf. Selective Way Ins. Co. v. Nat'l Fire Ins. Co. of Hartford*, No. CIV. JKB-12-3100, 2013 WL 6705138, at *7 (D. Md. Dec. 18, 2013) ("[T]he Policy did not define 'insured' or an insured's 'interest' in a restrictive way; consequently, the Court utilizes those terms as they have been defined in [state] law."). This broad statutory provision does not protect or otherwise confer

a right on Plaintiff where the plain language of the contract shows otherwise, as will be explained below.

Even if Virginia law applied—which would be the alternative state's law this Court would use if West Virginia law was not applied to interpretation of the insurance contract—, the Court would not find that Plaintiff could sue as a third party beneficiary to the insurance policy. Virginia law provides:

> [I]f a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise.

Va. Code § 55-22. Although this statute may be more liberal than its West Virginia counterpart, Virginia courts have held that "[t]he third party beneficiary doctrine is subject to the limitation that the third party must show that the parties to the contract clearly and definitely intended it to confer a benefit upon him." *Prof'l Realty Corp. v. Bender*, 222 S.E.2d 810, 812 (Va. 1976); *see also In re Cnty. Green Ltd. P'ship*, 438 F. Supp. 693, 698 (W.D. Va. 1977) ("To come within the purview of this provision it is insufficient for a person to show that incidental to the contract he would benefit from its enforcement."); *Norfolk-Portsmouth Newspapers, Inc. v. Stott*, 156 S.E.2d 610, 612 (Va. 1967). Here, it cannot be said that the insurance policy clearly meant to confer a benefit on Plaintiff. As will be discussed in more detail below, the policy language in fact makes clear the opposite. Neither would Virginia Code § 38.2-303, which discusses insurable interests, provide Plaintiff standing where it otherwise did not exist.

Having found that Plaintiff cannot sue as a third party beneficiary to the insurance policy, the Court must now determine if Plaintiff is, in fact, an insured under the policy. The Arch insurance policy at issue in this case covers all properties for which the Bank has established

forced-placed insurance coverage. Arch Insurance Policy, Compl. Ex. 5, ECF No. 1-1 at 26-72.

Each property included in this "blanket" policy has been assigned its own valuation. This is

evident from the Notice of Insurance for Plaintiff's property, which lists commercial insurance

coverage in the amount of $71,790.13. Notice Insurance, Compl. Ex. 1, Pl.'s Mem. Supp. Mot.

Partial Summ. J., ECF No. 267-2. The "Declarations" section of the policy lists the Bank as the

only "Named Insured." Policy at 26. "Named Insured" is defined in the policy as "the creditor,

lending institution, company, or person holding and/or servicing the Mortgagee Interest on the

Described Location." *Id.* at 43 (defining terms related to forced-placed coverage on buildings

other than dwellings). The "Borrower" is defined as "the purchaser of the Described Location for

whom You have financed property or which You are servicing for others under written

agreement. The Borrower has no interest in this policy *unless a Notice of Insurance is issued*."

*Id.* (emphasis added).[4] It is undisputed that a Notice of Insurance was issued. However, just

because a borrower could not have an interest *unless* a Notice is issued, it does not follow that

the issuance of a Notice automatically *creates* an interest; that language about the effect of the

Notice could simply apply to situations where the Borrower has been named as an insured under

the policy, which is not the case here.

Contrasting this language with the applicable language for dwellings strengthens this

interpretation; the policy's section on dwellings provides, "The Borrower is an Additional

Named Insured provided You have requested coverage on his/her Dwelling." *Id.* at 28. The

policy clearly limits the rights and interests of borrowers on commercial properties to a greater

degree than those of borrowers on dwellings. This interpretation is confirmed by language

---

[4] As described in the policy, "'You' and 'Your' refer to the Named Insured shown on he [sic]
Declarations Page." Policy at 43.

appearing on the second page of the policy, above the signature line for an authorized representative of the Named Insured:

> This Policy does not provide covered for Errors & Omissions or liability Insurance, nor does it provide coverage for the Interest or equity of the Borrower as It Is [sic] collateral protection insurance, protecting Your Interest, subject to the Policy terms and conditions. Please read Your Policy for specific terms and conditions of coverage.

*Id.* at 27.

Plaintiff argues that because the policy creates obligations for the borrower, the policy must likewise give the borrower an interest in the policy. In the subsection entitled "Your Duties After Loss," the policy states, "The Borrower may submit claims and perform any of Your duties. However, We reserve the right, for any reason to require Your assumption of any and all of Your duties." *Id.* at 55. Although the Borrower may act on behalf of the named insured, this does not give the Borrower independent rights under the policy which do not otherwise exist. Plus, the policy itself does not directly place any obligations on the borrower. *See id.* at 55.[5]

Attention should also be given to the Notice of Insurance, although it is separate from the policy, which states, "This policy names the Lender (Mortgage[e]) as the sole named insured." Notice Insurance. Although the Notice "neither amends, extends nor alters the coverage afforded by the lender's master policy which it describes," *id*, it is nonetheless one more piece of evidence showing that the policy was not meant to cover Plaintiff. It is also noteworthy that Mr. Hankins admitted in his deposition that he understood that the Bank was the named insured under this policy. Hankins Dep. at 101, ECF No. 161-1.

The Court is persuaded by the reasoning of *Fraddosio v. Proctor Financial, Inc.*, No.

---

[5] Although a letter from Compass suggests that Plaintiff must permit inspection of the property under the terms of the policy, Compl. Ex. 9, ECF No. 1-1 at 99, the drafter of that letter was mistaken, and the letter does not show that Plaintiff has obligations or any corresponding rights under the policy.

3:10-CV-87, 2011 WL 3844087 (N.D. W. Va. Aug. 30, 2011), in analyzing the situation at hand. In that case, an insurance company issued a forced-placed insurance policy on the plaintiff's home, which was issued to the plaintiff's lender, the U.S. Department of Agriculture. After the home sustained fire damage, payment was made to the Department on the claim. The plaintiff then sued the insurance broker and the insurance adjuster, alleging violation of West Virginia's Unfair Trade Practices Act ("WVUTPA"), among other claims. The district court granted summary judgment in the defendants' favor on the WVUTPA claim, noting that the plaintiff could only succeed in his WVUTPA claim if he was an insured under the forced-placed insurance policy and finding that the plaintiff was not an insured under said policy. *Id.* at *3-6. In so finding, the court noted, *inter alia*, that the insurance policy at issue listed the Department as the named insured and that it defined "you" and "your" as referring to the named insured. *Id.* at *3. Additionally, the fact that the Department passed on the cost of the premiums to the plaintiff and that the plaintiff owned the property did not mean that the plaintiff was an insured under the policy. *Id.* at *3-4. According to the court, "[i]t  is well-settled that [a]s the mortgagor and mortgagee each has an insurable interest in the mortgaged property, insurance taken by one on his or her own interest and in his or her own favor alone does not inure to the benefit of the other." *Id.* at *3 (internal quotation marks omitted). The court also clarified that other alleged ambiguities concerning the insurance policy did not create a genuine issue of material fact. *Id.* at *4-6.

The Court similarly finds that Plaintiff is not covered by the insurance policy at issue in this case. The policy language is clear that Plaintiff is not a named insured under the policy. The commercial property was one of many covered by the blanket policy, taken out by the Bank for its own benefit. Any alleged ambiguities in the insurance policy can easily be explained to show

15

that Plaintiff is not an insured under this policy. The Court accordingly finds that there is no genuine issue of fact regarding Plaintiff's status under the insurance policy and that the Plaintiff is not an insured under the policy. Because Plaintiff is not a party to the insurance contract, it cannot claim breach of any implied covenant of good faith and fair dealing relating to the contract, nor collect any damages in relation therewith. The Court therefore grants summary judgment in favor of GAA on Count III.

## VII.    Count IV - Unfair Claims Practices

Plaintiff also alleges violation of the WVUTPA, found at West Virginia Code § 33-11-1 *et seq*, by GAA. As with the previous section, the Court assumes—without finding—that West Virginia law applies to the interpretation of this Count. Plaintiff alleges many forms of unfair claim settlement practices by GAA, in violation of West Virginia Code § 33-11-4(9). However, the WVUTPA prohibits a third-party claimant from bringing a cause of action under the Act for unfair claims settlement practices. *See* W. Va. Code § 33-11-4a(a) ("A third-party claimant may not bring a private cause of action or any other action against any person for an unfair claims settlement practice. A third-party claimant's sole remedy against a person for an unfair claims settlement practice or the bad faith settlement of a claim is the filing of an administrative complaint with the Commissioner in accordance with subsection (b) of this section. A third-party claimant may not include allegations of unfair claims settlement practices in any underlying litigation against an insured."); *see also Fraddosio*, 2011 WL 3844087, at *3 (citing this same provision).

Plaintiff also alleges violation by GAA of § 33-11-4(2), which states:

No person shall make, publish, disseminate, circulate or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated or placed before the public, in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster or over any radio or television

16

> station, or in any other way, an advertisement, announcement or statement
> containing any assertion, representation or statement with respect to the business
> of insurance or with respect to any person in the conduct of his or her insurance
> business, which is untrue, deceptive or misleading.

Although Plaintiff has made general allegations about the falsity of certain statements made by

GAA, this has largely been in the context of Plaintiff's equitable estoppel claim. Plaintiff has

failed to sufficiently present a factual basis to sustain a claim under this specific provision.

The parties are in agreement that no private right of action would exist for Plaintiff's

unfair trade practices claim if Virginia law applied.

In light of the foregoing, the Court grants summary judgment in favor of GAA on Count

IV.

## VIII.     Count V - Unjust Enrichment

Plaintiff has withdrawn this claim. Therefore, Count V is dismissed as moot.

## IX.     Count VI - Equitable Estoppel

In this Count, Plaintiff alleges that Defendants made false representations to Plaintiff, that

Plaintiff relied on those misrepresentations, and that Defendants should therefore be estopped

from asserting legal defenses to Plaintiff's claims, disgorge any benefits, and discharge

Plaintiff's loan. Compl. ¶¶ 159-66. GAA moves for summary judgment on this claim. To

succeed on a claim for equitable estoppel, Plaintiff must prove the following:

> [T]here must exist a false representation or a concealment of material facts; it
> must have been made with knowledge, actual or constructive of the facts; the
> party to whom it was made must have been without knowledge or the means of
> knowledge of the real facts; it must have been made with the intention that it
> should be acted on; and the party to whom it was made must have relied on or
> acted on it to his prejudice[.]

*Harshbarger v. CSX Transp., Inc.*, 484 F. Supp. 2d 515, 517 (S.D. W. Va. 2007) (quoting syl. pt.

3, *Cleaver v. Big Arm Bar & Grill, Inc.*, 502 S.E.2d 438 (W. Va. 1998)). GAA argues that

Plaintiff could not have relied on any alleged misstatements because Plaintiff has no interest in

the underlying insurance policy. The Court is inclined to agree. Plaintiff has no interest under the policy, and therefore it cannot be said that those making the statements intended Plaintiff to act upon those statements. Rather, the Bank and/or Arch relied on the denial of coverage, not Plaintiff. The Court therefore grants summary judgment in favor of GAA on this Count.

## X.      Count VII - Civil Conspiracy

In this last Count, Plaintiff argues that all Defendants engaged in a civil conspiracy. Under West Virginia law, a civil conspiracy is defined as "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." Syl. pt. 8, *Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va. 2009). GAA has moved for summary judgment in its favor on this claim. The Court notes that civil conspiracy is a legal doctrine for liability, "not a *per se*, stand-alone cause of action." Syl. pt. 9, *id.* Because, for the reasons explained above, Plaintiff has no interest in the insurance policy at issue in this case, and because all other claims have either been dismissed or adjudged in favor of GAA, the Court finds that Plaintiff's civil conspiracy claim—as derivative of the other underlying claims—must fail. Therefore, summary judgment is granted in favor of GAA on Count VII.

## XI.      Motion to Strike

Plaintiff has moved to strike all references to Fred Davis and all exhibits referring to his criminal indictment and sentencing. ECF No. 324. Plaintiff argues that Fred Davis was a 50% owner of Plaintiff company at the time that the property at issue was purchased but that he otherwise has no connection to the issues at hand; Plaintiff believes that allowing irrelevant and scandalous references to Mr. Davis to remain in the record would harm Mr. Hankins' reputation. Although the Court has the discretion to strike material that is "redundant, immaterial,

impertinent, or scandalous," Fed. R. Civ. P. 12(f), the Court declines to exercise its discretion here and denies Plaintiff's motion. Although the information included by GAA about Mr. Davis is largely irrelevant to the case at hand, the Court does not believe that the potential for harm to Mr. Hankins is so great, in light of the other information otherwise available, that references to Mr. Davis must be struck from the instant case. Plaintiff's request for attorney's fees associated with this motion, as reflected in ECF No. 329, is also denied. GAA requests that a hearing be held on this motion, but that request is rejected as unnecessary.

## XII.    GAA's Request for Sanctions

GAA requests, in its response to Plaintiff's supplemental memorandum, that sanctions be imposed on Plaintiff pursuant to Federal Rule of Civil Procedure 11 for its failure to adequately investigate the possible grounds underlying Counts II and V—which GAA argues would have caused Plaintiff to uncover the lack of any basis for those Counts—and filing those Counts anyway. ECF No. 323. The Court declines the request to grant any sanctions in this situation. GAA's request is denied.

## XIII.   Conclusion

For the reasons explained above, Plaintiff's motion for summary judgment (ECF No. 266) is **DENIED as moot**, and GAA's motion for summary judgment (ECF No. 275) is **GRANTED in part**, specifically as to Counts I, III, IV, VI, and VII. Counts II and V are **DISMISSED as moot**. The Court **DENIES** both Plaintiff's motion to strike (ECF No. 324) and GAA's request for sanctions (ECF No. 323). The Court also **DENIES as moot** ECF Nos. 271, 272, and 277. As no claims remain against GAA, the Court **DIRECTS** the Clerk to terminate GAA as a party to this case.

19

Additionally, the Court **DIRECTS** Plaintiff to file, within fourteen (14) days of the entry of this Memorandum Opinion and Order, a report discussing whether it intends to continue pursuing its claims against Compass and its intentions for otherwise proceeding in this case.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        June 11, 2014

ROBERT C. CHAMBERS, CHIEF JUDGE